**Richmond.**

Nichols' Adm'r v. W. O. & W. R. R. Co.

April 7th, 1887.

*Absent*—Lewis, P.

1. Negligent Injuries—*Liability.*—Where the owner, directly or indirectly, induces persons to enter and pass over his premises, he thereby assumes an obligation that they are in a safe condition and suitable for such use, and if a person be injured by his breach of such obligation the owner is liable therefor in damages.

2. Idem—*Case at bar.*—Where the direct and usual path to a railroad company's depot lies over a switch on which often stand freight cars with an opening left between two of them, so as to leave the path unobstructed, and this path is habitually used by the patrons and employees of the company with the knowledge and without the disapproval of the officials, it may be assumed that the company invites persons having business at the depot to use that path between the cars to go there; and in using it for that purpose, such persons are not guilty *per se* of negligence; and if by a sudden, unsignalled act of the company's servants, the cars are run together, thereby crushing such a person, the company is liable in damages for the injury.

Error to judgment of circuit court of Loudoun county, rendered second November, 1884, in an action of trespass on the case wherein Samuel T. Nichols, administrator of Francis E. Nichols, was plaintiff, and the Washington, Ohio and Western Railroad Company was defendant. The verdict at the first trial was for the plaintiff, assessing his damages at $4,000. On defendant's motion, the court set aside the verdict and awarded a new trial. At the second

trial the jury found for the defendant, and the plaintiff moved for a new trial. But the court overruled the motion, and entered judgment for the defendant. The plaintiff obtained a writ of error and *supersedeas*. Opinion states the case.

*Holmes Conrad* and *E. Nichols* for the plaintiff in error.

*Barton & Boyd* and *E. P. Janney* for the defendant in error.

HINTON, J., delivered the opinion of the court.

This is an action of tort, brought by the personal representative of Francis E. Nichols, to recover damages for injuries sustained by him which caused his death.

A trial was had before a jury, which resulted in a verdict for the plaintiff for $4,000. This verdict the court, upon the defendant's motion, set aside; and to this action of the court, as well as its action in refusing certain instructions and in giving others, the plaintiff duly excepted. At the next term the case was submitted to the court, when a judgment was rendered for the defendant, and thereupon this writ of error was taken. The facts certified as proven on the first trial, and submitted to the judge on the second, with the plat filed as a part thereof, show the topography of the ground, the location of the depot and other buildings in the vicinity, and the position of the cars on the defendant's track immediately preceding the accident to have been as follows: The main track of the defendant's railroad runs nearly due east and west, and about one hundred and fifty yards south thereof and parallel thereto is a pike running through the centre of the village of Purcelville. From this pike a road runs in a northwesterly direction across the railroad to Hillsboro.

Extending eastwardly from this road, and immediately south of the railroad, is the freight depot, and adjoining which, but still farther east, is the passenger depot. Along the north side of both freight and passenger depots is a platform, usually more or less obstructed by the freight and express goods habitually unloaded thereon; and along the east end of the passenger depot there is also a platform with three steps at its southern terminus extending to the ground. Beginning at a point on the main track some distance west of the Hillsboro road is a switch, which extends eastwardly across said road; and around and beyond said depot buildings, and from a point on the Hillsboro road about sixty yards south of the passenger depot, is a path which extends towards the steps at the southeastern corner of the passenger depot, and this path is usually taken by persons going to and from the depot. The land east of the Hillsboro road and south of the railroad is open, and nearly level, while that west of the Hillsboro road and south of the railroad is woods—dense near the pike, and sparsely timbered as it extends northwestwardly towards the switch. The switch, or rather that portion of the switch west of the Hillsboro road, runs through a cut so deep that, by reason thereof and the intervention of a warehouse which stands near the track, the smoke-stack of an engine can only be seen by persons going along the before-mentioned path while in the line of vision between the warehouse and the switch.

It appears that it was the invariable custom of the agent at the depot to part freight cars, immediately after they were left or placed on the switch, at a point nearly opposite the passenger depot for the purpose of affording a passage to the patrons and employees of the road, and it specially appears that it had been done in this instance, although it would seem that, from lack of assistance, the opening left was scarcely as wide as

usual. At no time was anything said or done by the defendant's agents or employees to convey to the public the idea that they should not cross the track at these openings. On the morning of the accident there were standing on the switch two or more cars west of the road, and five cars east of the road. These five cars had been parted on the preceding day by the company's agent a distance of eighteen inches or more about midway between the path and the steps at the southeast corner and the platform of the passenger depot for the express purpose of allowing people to pass over the track, and this was the condition of the cars on the morning of the ninth of August, 1883, when the intestate, Frank E. Nichols, who was on his way to the depot to meet his brother, who was expected home on the train due at 12 M., while in the act of passing over the track, was caught between the cars and killed by the sudden and rapid backing of the engine, which drove the cars together.

Now it is agreed on all hands that there is a wide difference between the obligation which a person or corporation owes to a mere license, and the duty which the same person or corporation owes to one who comes upon his premises by an invitation, either expressed or implied.

In the first case it is generally admitted that the party comes at his own risk and enjoys the license subject to its concomitant risks or perils, and that in such case no duty is imposed upon the owner or occupant to keep his premises in safe and suitable condition for his use, and the owner or occupant is only liable for any wanton injury that may be done to the licensee. *Hounsell* v. *Smyth*, 7 C. B. (N. Y.) 738; *Barnes* v. *Ward,* 9 C. B. 392; *Hardcastle* v. *South Yorkshire Railway*, 4 Hand. & N. 67; *Binks* v. *S. Y. Railway Co.*, 3 B. & S. 250; *Balch* v. *Smith*, 7 H. & N. 741; *Sweeny* v. *Old Colony and Newport Railroad Co.*, 10 Allen,

375; *Carlton* v. *Francoma I. & C. Co.*, 99 Mass. 216; Pierce on Railroads, 274.

On the other hand the law imposes an obligation on the owner or occupant to provide for the security against accident and injury of those he has invited or induced to come upon his premises by such an adaptation and preparation of his place for their reception and use as would naturally lead them to suppose that they might properly and safely enter thereon. Accordingly it has been generally held that where the owner or occupier, either directly or by implication, induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby. In all cases like the present, it is a question of prime importance, in determining the liability of the defendant, to ascertain whether the injured party was upon the premises at the time of the accident under a bare license or permission, or in pursuance of an invitation. Here the deceased must be regarded as having adopted this route in pursuance of an invitation held out to him by the conduct of the defendant company. The circumstance that the cars were habitually separated at this point, when taken in connection with the location of the steps to the platform of the passenger depot and the constant uninterrupted use of the same by persons getting on and off at this depot, which was never at any time discountenanced by the road or its officials to whom it was known, is susceptible of no other construction than that it was designed as a path by means of which access might be gained to the depot, as well by persons having occasion to visit the depot as by the company's employees. Under these circumstances it cannot be imputed to the deceased as negligence, if, in the absence of some warning, he selected this route rather than the other and longer one around by the freight

depot.    Under such circumstances it seems to us clear that an obligation was imposed upon the company to see that it should not become a source of danger to those to whom it had held it out as a passage or way through which they might safely go, and a duty was imposed upon the company of notifying persons entitled or invited to use it, in some unmistakable way, that it was about to be closed before closing it.    *Balto. & Ohio R. R.* v. *Fitzpatrick*, 35 Md. 38 ; *Gills* v. *Pennsylvania Railroad Co.*, 59 Penn. State, 129 ; *Kay* v. *Penn. Railroad Co.*, 65 Penn. 269.

Now, if we are right in the views already expressed, here was an invitation plainly extended to the plaintiff to cross the railroad at that point, for, as we have before intimated, the custom or habit of the company in making and leaving open a passage-way between the cars at this point, which the record shows was fully known to its officers, taken in connection with the general adoption of it as the proper route by all persons having occasion to go to the passenger depot, and the failure of the company to provide for such persons some other unobstructed route can be regarded as nothing else than an invitation from the company to the deceased to use that way.    There can remain but one other enquiry, and that is this, Was the deceased, in accepting this invitation, so wanting in the ordinary care required of him as to deprive him of the right to recover?    A question not difficult to answer, if we remember it amounts to nothing more than this, whether the danger in attempting to cross the track between those stationary cars was so obvious that a person of ordinary prudence would not have made the attempt.    Let it be borne in mind that all that could be required of the deceased was reasonable care in view of the special circumstances of the case.    The cars were not only at a stand-still, but there is nothing to show that there was anything to indicate to the deceased that they were about to be set in motion.    Under such circum-

stances it was a matter of little consequence whether the cars were two or ten feet apart. In either case, there being nothing to indicate to the deceased that these cars were about to be moved, he had a right to suppose that he could effect his passage in safety. This was the view taken by the jury, and we entertain no doubt of its correctness. That there are cases where the question of negligence is one of law to be decided by the court, but negligence as a general rule is a question of fact, which ought to be submitted to the jury ; and this is always the case where the facts are in dispute and the inferences, which fair minded men would draw from them, are doubtful.

In this view of the case it becomes unnecessary to consider the instructions.

The judgment of the circuit court of Loudoun county must be reversed and a judgment will be entered here upon the verdict rendered on the first trial.

Fauntleroy, J., dissented.

Judgment reversed.