# CHARLESTON.

## WOOLWINE'S ADM'R *r.* CHES. & O. R'Y CO.

Submitted January 25, 1892.—Decided April 2, 1892.

1. DAMAGES—NEGLIGENCE.

A person, who without invitation; visits a telegraph-office merely for the purpose of paying a friendly call to the operator, which office is owned and occupied by a railroad company for its own purposes and convenience, and which is located on its land and near its track, from which occassional messages are sent and received for outside parties for pay, visits said office as a mere voluntary licensee, subject to the concomitant risks and perils, and no duty is imposed upon the owner or occupant to keep its premises in safe and suitable condition for such visitors, and the owner is only liable for such willful or wanton injury as may be done to such licensee by the gross negligence of its agents or employes.

2. DAMAGES—NEGLIGENCE.

Where there is no controversey in regard to the facts or inferences that may be fairly drawn therefrom, the question of negligence is one of law for the Court to determine.

3. DAMAGES—NEGLIGENCE.

A case in which the facts proven did not tend in any clearly appreciable degree to sustain the plaintiff's claim, and the evidence was properly excluded from the jury by the Court.

*Adams & Miller* for plaintiff in error, cited Patt. R'y Acc. § 187; 6 L. T. (N. S.) 684; 65. Pa. St. 269; 11 W. N. Cas. (Pa.) 455; 58 Wis. 646; 15 Eng. & Am. R. R. Cas. 424; 53 Wis. 626; 1 F. & F. 361; 92 N. Y. 289; 106 Mass. 461; Id. 180; 1 Shear. & Redf. Neg. § 97; Id. § 98; 101 N. Y. 391; 120 Mass. 306; 69 Me. 173; 7. C. B. (N. S.) 731; 68 N. Y. 283; 69 Me. 306; 4 Ex. L. R. 257; 38 Up. Can. Q. B. 173; 48 Vt. 127; 4 Shear. & Redf. § 99; 22 O. St. 227; 50 Barb. 39; 50 Mo. 461; 55 Ill. 226; 38 Ill. 424; Thomp. Neg. 1155; 36 Md. 366; 64 Mo. 439; 23 Vt. 378; 7 Metc. 602; 19 Conn. 507; 14 How. 485; 17 Wall. 657; 26 Conn. 591; 1 Ad. & El. 29; 59 Pa. St. 129; 2 Ror. R'ys 1131; 79 Pa. St. 33; 60 Mo. 475; 2 W. R'y Law, 1206, 1270, 1271; 4 Houst. 103; 7 C. B. 73; 88 N. C. 129·; 9 C. B. 420; Whart. Neg. §§ 348, 388; 14 Week. Rep. 611; Cool. Torts 358; Laws. Rights & Rem. § 1194; Patt. R'y §§ 187, 188; 133 Mass. 121; 92 N. Y. 289; 34 W. Va. 514; 25 W. Va. 570.

*J. E. Chilton* for defendant in error, cited 25 W. Va. 692; 35 W. Va. 117; 1 Shear. & Redf. Neg. § 15; Big. L. Cas. Torts 662; 34 W. Va. 514; 2 Wood R'y Law 1270, 1271; 83 Va. 554; 22 Fed. Rep. 609; Big. Torts 697 note; 83 Va. 102; 10 Allen 275; 59 Pa. St. 129; 25 Mich. 1; 67 N. Y. 366, 370; 41 Am. Rep. 572; 99 Mass. 216; 29 O. St. 364; 10 Metc. 371; 101 N. Y. 381; 142 Mass. 296; 61 Eng. Com. 731; 100 Ind. 221; 66 Ia. 1708, 713; 69 Me. 173; 2 Wood R'y Law 1271; Bish. Non. Con. Law 446, 1054; Cool. Torts 358; 58 Wis. 646; 88 N. C. 129; 30 W. Va. 228; 17 Wall. 651; Pat. R'y Acc. Law 184–188; Barry *v.* N. Y. Cent. R'y Co. 92 N. Y.

ENGLISH, JUDGE:

This was an action of trespass on the case, instituted on the 13th day of March, 1890, by M. A. Manning, adminis-

trator of the estate of A. D. Woolwine, deceased, in the Circuit Court of Summers County, against the Chesapeake & Ohio Railway Company, charging that the death of his intestate was occasioned by the gross carelessness and negligence of the defendant, and claiming ten thousand dollars damages. There was a demurrer interposed to the declaration, which was overruled ; the defendant pleaded "not guilty," and the case was submitted to a jury. The plaintiff, having introduced his evidence, rested his case, and the defendant moved the court to strike out all of the plaintiff's evidence, which motion was sustained, and the plaintiff's evidence was stricken out, to which action of the court the plaintiff excepted, and thereupon the jury rendered a verdict for the defendant. The plaintiff then moved the court to set aside said verdict, which motion the court overruled, and the plaintiff excepted, and tendered a bill of exceptions, setting out all of the evidence of the plaintiff, and the plaintiff applied for and obtained this writ of error.

The facts shown by the evidence are, in substance, as follows : At the east end of the Big Bend tunnel, in said county of Summers, and about eighty yards from the eastern portal of said tunnel, the defendant had constructed a switch, which diverged from the main track of the defendant to the right, passing along near the bank of the Greenbrier river; and that immediately on the bank of said river, and between said switch and the river, the defendant had erected a small building, fourteen by sixteen feet in size, for its own convenience as a telegraph office, the front part of which building rested on the bank, and the back rested on perches. Those living in the immediate vicinity of this telegraph office, were tunnel hands, and were employes of the defendant.

The plaintiff's intestate was a telegraph operator on the Norfolk & Western Railroad, and was at home on a visit to his parents, who lived about two miles from the tunnel; and on the evening of the 6th day of February, 1890, he paid a visit to this office, being an acquaintance of Bryant, the operator. At the time of this visit the train which was used for working in the tunnel was standing in front of the

telegraph office, on the side track, which was seven feet from the front of said office, and had been so standing for one hour and fifteen minutes, and it appears that Joe Towns, one of the employes, whose duty it was to close the switch after the tunnel train came in on the side track, had failed to do so, and a freight train, coming east through the tunnel, ran into this open switch on to the side track, and wrecked the tunnel train, throwing some of its cars against said office, knocking it over the river bank into the river, thereby causing the death of the plaintiff's intestate, who had entered said telegraph office about twenty five minutes before, and at the time of the accident was lying on a table in the said office.

It appears that the plaintiff's intestate had, about a year previous to that time, been employed by said Bryant, and worked a week in his place as operator in said office; and the natural inference is that he called on this occasion, as is natural for persons engaged in the same business, to pay Bryant a friendly visit. So far as is disclosed by the evidence, he had no business to transact of any character with the office, although it appears that messages had occasionally been sent and received from this office by parties having no connection with the railroad, but that the office was maintained by the defendant for its own convenience, as is shown by the plaintiff's testimony.

No one could presume from anything that appears in the case that any employe of the defendant left this switch open with the intent of injuring the plaintiff's intestate, A. D. Woolwine. On the contrary, it appears that said Woolwine did not come to said telegraph office for more than an hour after the tunnel train ran in on the side track, and said switch was accidentally left open by Joe Town, whose duty it was to close it after said tunnel train came on to the siding.

No one appears to have been aware of said Woolwine's intention to visit said telegraph office, and, if they had, it does not appear that any employe of the defendant had any ill feeling or spite against said Woolwine; and we can not say that any person so employed would intentionally wreck two trains and demolish the telegraph office for the

purpose of injuring Woolwine. Morover, no one could possibly have foreseen that the freight train, by leaving the main track, and running out on this siding, would have thrown the tunnel cars against the telegraph office, which stood seven feet from the side track, and knocked it down the river bank and into the river. This, however, appears to have been one of the possibilities.

The evidence in the case shows that said Woolwine was fully acquainted with the telegraph office and its surroundings, as he had during the previous year been employed for a week as operator in said office by said Bryant.

Counsel for the plaintiff in error, in their brief, assert that "the general principle is that trespassers and licensees going upon the premises of another take the premises as they find them, and run such risks as are incident to the existing condition of such premises, and therefore can not complain of their needing repairs, and can not recover for injuries resulting from the condition in which they find the premises; but the distinction is that they can recover for injuries resulting from the subsequent actual negligence of the defendant while the licensee is on the premises." This, we believe, states correctly the law where parties go upon the premises of another under the circumstances that Woolwine did in this case.

If we apply this law to the facts of this case, we find that the switch was open when he went to the telegraph office, and so remained for an hour and twenty minutes before the accident happened; and Woolwine had been in the office about twenty five minutes when the collision occurred. There was no change in the switch after the arrival of said Woolwine, and he took upon himself the risk of the premises in the condition he found them.

We may next inquire whether the circumstances of this case are such as to entitle the plaintiff to complain of a breach of duty on the part of the defendant towards his intestate. 1 Shear. & R. Neg. § 316, under the head of "Who may complain. of a breach of duty," says: "The plaintiff must show a breach of some duty owing to him, or which was imposed for his benefit." It is not every one who sustains an injury by reason of some act or omission on the

part of an employe of a railroad company that entitles a person injured by reason thereof to demand and recover damages from said company by reason thereof. See Bish. Non-cont. Law, § 446; *People* v. *Fairchild*, 67 N. Y. 336.

We find that 1 Shear. & R. Neg. § 97, says : "The injury which a stranger does to the railroad company by entering upon its way is infinitesimal, while the risk to himself is great. The injury which he does to his neighbor by secretly entering his bedroom is great, while the risk to himself, if undiscovered, is infinitesimal. In each case, it is true, the effect upon the trespasser's right to sue for damages may be the same, but this will be for very different reasons. If he walks along the track he knowingly takes the risk of fatal injuries, and should not recover for that reason. If he secrets himself in the bedroom, he knowingly engages in a gross invasion of his neighbor's rights, and should not recover for that reason. Most of the reported cases which appear at first sight inconsistent with this proposition, and all of them which are not inconsistent with other and better considered decisions, will prove upon examination to be cases which turned, not upon contributory negligence, but upon the question whether the defendant owed any duty to persons in the plaintiff's situation, which he had neglected to perform."

Now, let us inquire what duty the defendant owed to this unfortunate young man under the circumstances detailed by the evidence. He went upon the defendant's premises, and into its telegraph office, not for the purpose of sending a message, or transacting any business of any kind whatever with any of the agents or employes of the company, but for the purpose of paying a social visit to the operator, who was an old acquaintance. In the case of *Sweeney* v. *Railroad Co.*, 10 Allen, 368, BIGLOW, C. J., in delivering the opinion of the court, said :

"In order to maintain an action for an injury to person or property by reason of negligence or want of due care there must be shown to exist some obligation or duty towards the plaintiff which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault or negligence or breach

of duty where there is no act or service or contract which a party is bound to perform or fulfill. All the cases in the books in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered, or suffered it to be in a dangerous condition, whereby accident and injury have been occassioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty has been violated. Thus a trespasser who comes on the land of another without right can not maintain an action if he runs against a barrier, or falls into an excavation there situated. The owner of lands is not bound to protect or provide safeguards for wrongdoers. So a licensee who enters on premises by permission only, without any enticement, allurement, or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure."

In the case of *Diebold* v. *Railroad Co.*, 50 N. J. Law, 478 (14 Atl. Rep. 576) it was held : "Where a railroad company provides offices for the transaction of its business, accessible from the public streets, the presence in the freight yard of the company of a person having business with such offices is not a necessary incident of his business with the company. He is at best a licensee, towards whom the company owes no special duty."

There appears to be a marked distinction as to the liability incurred by property owners to persons who go upon their premises as trespassers, or as licensees or volunteers, and those who go there upon business, and we find in a note on page 697 in "Leading Cases on the Law of Torts," by Bigelow, it is said, in commenting upon this distinction, that "*Sweeney* v. *Railroad Co.*, 10 Allen, 368 and *Indermaur* v. *Dames*, L. R. 1. C. P. 274, L. R. 2 C. P. 311 have settled the distinction between the duty which a man owes to persons who come upon his premises as bare volunteers or licensees, and those who come as customers or

otherwise in the course of business, upon the invitation, express or implied, of the occupier. As to the latter, the occupier is bound to exercise reasonable care, to prevent damage from unusual danger, of which the occupier has or ought to have knowledge; and this, though the transaction had already been completed, and the plaintiff had returned only for some incidental (if proper and usual) purpose connected with it. As to the former, the party takes his own risk, and, so long as there is no active misconduct towards him, no liability is incurred by the occupier of the premises by reason of injury sustained by a visitor on his premises." * * * "Upon careful examination of the above and other cases, however, it will be found that the authorities may be classed under three heads, to wit: (1) Bare licensees or volunteers; (2) those who are expressly invited or induced by active conduct of the owner to go upon his premises; (3) customers and others, who go there on business with the occupier. The general rule will then be that in those cases which fall under the first head the party injured has no right of action against the occupant of the premises, and the contrary in cases falling under the second and third heads."

The case of *Indermaur* v. *Dames*, above referred to, was a case in which the defendant was a sugar refiner, and there was a hole or hatchway through the floors of the different stories for the purpose of raising and lowering sugar to and from the different stories, which hatchway was level with the floors, and might have been, but was not, fenced. The plaintiff was a gas-fitter, and went upon the premises for the purpose of examining some gas jets, with the view of applying a patent gas regulator, and while on the premises the plaintiff accidentally fell through said hatchway while thus engaged upon an upper floor.

"Held that, inasmuch as the plaintiff was upon the premises on lawful business in the course of filling a contract in which he (or his employer) and the defendant both had an interest, said hatchway or hole was, from its nature, unreasonably dangerous to persons not usually employed upon the premises, but, having a right to go there, the defendant was guilty of a breach of duty towards him in suffering the hole to be unfenced."

The testimony of Bryant in the case under consideration shows that he had not seen said Woolwine for a month or two ; that his business was that of a telegraph operator on the Norfolk & Western Railroad, and, when asked what was said Woolwine's business there (meaning at the time of the accident) answered : "I do not know, I am sure. I suppose he just came in to speak to me ;" and, in answer to the question whether said Woolwine had any business there that night, answered : "He did not transact it, if he did ;" and he also stated that he left said Woolwine lying on the table where his instruments were placed when he went out of the office, in reply to the question, "Where was Woolwine when the accident occurred?"

So far, then, as the presence of said Woolwine at the time of the accident, is concerned, it appears that he was not invited there by Bryant, the operator in charge of the office, as he had not seen him for a month or two previous to that evening. He was not there on business, as he had been there for nearly a half hour, and had not intimated that he had any business of any description with the operator, and had produced the impression on Bryant that he had merely called to see him; and his attitude on the table at the time of the accident would not indicate that he was there on business, but rather for the purpose of passing a little idle time with an old acquaintance. If he had been there for the purpose of sending or receiving a telegram, he might properly have been regarded as a licensee, as the evidence shows that telegrams were occasionally sent for persons not in any manner connected with the railroad company, and messages so sent had been charged for; but, under the circumstances, we can but regard him as a mere volunteer, going to this office for his own pleasure.

In the case of *Gillis* v. *Railroad Co.*, 59 Pa. St. 129 (point 4 of the syllabus) it was held : "A trespasser may maintain an action for wanton or intentional injury by the owner of the land," and in point 5 : "The owner of property is not liable to a trespasser, or to one who is on it by mere permission or sufferance, for negligence of himself or servants, or for that which would be a nuisance in a public street or common."

In that case the facts were as follows: A large crowd had congregated on the platform at the depot for the purpose of seeing the president of the United States, who was to pass the depot at a certain hour. The platform fell by reason of the unusual weight, and the plaintiff was thereby injured.

Sharswood, J., in delivering the opinion of the court, said: "The platform was open. There was a general license to pass over it, but he was where he had no legal right to be. His presence there was in no way connected with the purposes for which the platform was constructed. Had it been the hour for the arrival or departure of a train, and he had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by authority of defendants, as much as if he was actually a passenger; and it would then matter not how unusual might have been the crowd, the defendants would have been responsible. As to all such persons to whom they stood in such a relation as required care on their part, they were bound to have a structure strong enough to bear all who could stand on it; as to all others they were liable only for wanton or intentional injury. The plaintiff was on the spot merely to enjoy himself, to gratify his curiosity, or to give vent to his patriotic feelings. The defendants had nothing to do with that." * * * "I am bound to have the approach to my house sufficient for all visitors on business or otherwise, but if a crowd gathers upon it, to witness a passing parade, and it breaks down, though it may be shown not to have been sufficient even for its ordinary use, I am not liable to one of the crowd; I owe no duty to him."

In that case the court held that the court below was right in directing the jury to find a verdict for the defendant.

In the case of *Railway Co.* v. *Bingham*, 29 Ohio St. 364, it was held: "A railroad company is not liable for an injury to a person resulting from its failure to exercise ordinary skill and care in the erection and maintenance of its station house, where, at the time of receiving the injury, such person was at such station house by mere permission

and sufferance, and not for the purpose of transacting any business with the company or its agents, or any business connected with the operation of the road."

While I am disposed to regard the plaintiff in this case as a mere volunteer, going upon the premises of the defend-ant for the purpose of pleasure or pastime, yet, giving the circumstances the most favorable construction that can be given for the plaintiff, we can consider him as nothing more than a licensee; that is (as defined by Patterson in his Railway Accident Law, p. 176, § 184) "persons who be neither passengers, servants, nor trespassers, and not stand-ing in any contractual relations to the railway, are permit-ted by the railway to come upon its premises for their own interests, convenience, or gratification."

In the case of *Sutton* v. *Railroad Co.*, 66 N. Y. 243, the railway was held not to be liable to licensees for a failure to set the brakes on the cars stored on a siding, or otherwise block them to prevent their moving by force of the wind or by gravity.

So, also, Pierce on Railroads, p. 275, says : "But the duty and liability to keep its premises safe for public use do not arise out of a bare license or permission to use its premises. Still less do they exist in favor of a trespasser, although the company will be liable even to him for a wanton injury."

In the case of *Parker* v. *Publishing Co.*, 69 Me. 173, the court held : "No duty is owed to a mere licensee, and he has no cause of action for negligence in the place he is per-mitted to enter."

In the case at bar there is no controversy about the facts, the only witnesses introduced being those called by the plaintiff. It was held in the case of *Gonzales* v. *Railroad Co.*, 38 N. Y. 440 : "A question of negligence is one of law, where facts are uncontroverted." In the case of *Insurance Co.* v. *Doster*, 106 U. S. 30 (1 Sup. Ct. Rep. 18) the court held, in its opinion, delivered by HARLAN, J., that, "where a case fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury under proper directions as to the principles of law in-volved;" and in section 1 of syllabus: "A case should not be withdrawn from the jury unless the facts are undisputed,

or the testimony is of such conclusive character that a verdict in conflict therewith should be set aside."

So, also, in the case of *Randall* v. *Railroad Co.*, 109 U. S. 478 (3 Sup. Ct. Rep. 322) it was held (first point of syllabus) that "when the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court may direct a verdict for the defendant."

This Court, in the case of *Johnson* v. *Railroad Co.*, 25 W. Va. 571, while it holds, in the third point of the syllabus, that "negligence is in most cases a mixed question of law and fact, and generally what particular facts constitute negligence is a question for the determination of the jury from all the evidence before it bearing on the subject, rather than a question of law for the determination of the court," yet, in the fifth clause of syllabus, in the same case, this Court holds that, "if the facts are unambiguous, and there is no room for two honest and apparent reasonable conclusions, the court should not be compelled to submit the question to the jury as one in dispute."

Now, taking the entire evidence that was introduced in this case, there is nothing that indicates that the plaintiff was either directly or indirectly induced by the defendant to visit this office; but, on the contrary, it is clear from all the circumstances that he went there without invitation, either express or implied, and, while no one objected to his visiting the place, yet the law fixes the liability of either a corporation or an individual towards a party who comes upon their premises as the plaintiff did in this case ; and, as we have said above, he can not be regarded in a more favorable light than an ordinary licensee.

In the case of *Nichols* v. *Railroad Co.*, 83 Va. 102 (5 S. E. Rep. 171) the court says: "Now, it is agreed on all hands that there is a wide difference between the obligations which a person or a corporation owes to a mere licensee and the duty which the same person or corporation owes to one who comes upon his premises by an invitation, either express or implied. In the first place it is generally admitted that the party comes at his own risk, and enjoys

the license subject to its concomitant risks or perils, and that in such case no duty is imposed upon the owner or occupant to keep his premises in safe and suitable condition for his use, and the owner or occupant is only liable for any wanton injury that may be done to the licensee."

Numerous authorities have been cited by counsel for the plaintiff in error seeking to show that the defendant in the case under consideration owed some duty to the plaintiff; but, having arrived at the conclusion that the plaintiff in error stood upon the footing of a mere licensee, we are of the opinion that the defendant owed no duty to the plaintiff's decedent other than that it was its duty not to willfully or wantonly injure him, and that in going upon said premises under the circumstances of this case he enjoyed the license, subject to the risks and perils attendant thereon, and for these reasons we are of the opinion that there is no error in the judgment complained of, and the same must be affirmed, with costs and damages to the defendant in error.

AFFIRMED.