# CHARLESTON.

RAY C. ROBERTS v. KELLY AXE & TOOL CO.

(No. 5959)

Submitted October 26, 1927.   Decided November 8, 1927.

NEGLIGENCE—*Care Owed to Invitee Does Not Extend to Places Beyond Invitation, and to Which Invitee Would Not Reasonably be Expected to go.*

**The duty of reasonable care which a property owner owes to an invitee is co-extensive with, and limited by, the invitation. That care does not extend to places beyond the invitation, and to which the invitee would not reasonably be expected to go.**

(Negligence, 29 Cyc. p. 458 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by Ray C. Roberts against the Kelly Axe & Tool Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Lon H. Kelly, Thomas B. Jackson* and *Brown, Jackson & Knight,* for plaintiff in error.

*H. W. Houston* and *Lilly & Lilly,* for defendant in error.

HATCHER, PRESIDENT:

The defendant protests a judgment of $8,000.00 recovered by plaintiff on account of personal injuries sustained by him while at work upon its premises for an independent contractor.

The Metal Products Company contracted with the South Side Foundry and Machine Works to erect six smokestacks at defendant's plant. The stacks were to be set up at places indicated to a Mr. Flynn, representing the Products Company, by a Mr. Thayer, representing the Machine Works. The record contains a stipulation that about the same time a contract of like tenor and effect was entered into between the Machine Works and the defendant.

The plaintiff was an employee of the Products Company and was assisting in the erection of the stacks at the time of his injury. The record does not disclose where Mr. Thayer showed Mr. Flynn to construct the stacks, nor does it furnish any statements to defendant by Mr. Flynn, or any one representing the contractor, denoting the area to be occupied or the objects to be used in performing the work. The record simply shows that the stacks were erected through the roof of a shed which adjoins defendant's main building. Within that building is a crane which travels upon a track about 24 feet above the floor. The rail of the track is about one foot from the side walls. The crane is operated from the floor by means of cords. There are windows about a foot above the track on the side of the main building next to the shed. A ladder on the outside of the building was used to get on the roof of the shed.

At the time of the accident two of the stacks had been completed, and the third was in process of erection. The plaintiff and B. S. McKinney, foreman of the contractor, were upon the roof of the shed. McKinney ordered plaintiff to climb through one of the windows and tie a rope to a column inside the main building for the purpose of guying a section of the stack. McKinney helped plaintiff up into the window, warning him to look out for the crane. From his position in the window, plaintiff made a survey of the situation in the main building. At that time the crane, which was about fifteen feet away from him, was stationary. Its operator was perhaps twenty-five feet from the cords which controlled it, watching some of defendant's workmen. Thereupon plaintiff put his foot on a girder supporting the track rail, turned his back on the crane, and proceeded to tie the rope to an angle iron inside the window. Before he finished the knot, the crane was set in motion by Ray Turley, its operator. It dragged the plaintiff against a column, severely tearing and crushing one of his legs. He testifies that it was necessary for him to tie the rope where he did in order to guy the stack and that he was compelled to stand on the track while doing so.

Turley says that he did not know plaintiff was on the track; that he knew work was being done on the shed; that he could have seen plaintiff on the track had he looked; that he did not look because he had never seen anyone on the track before, because he had no reason to suppose that anyone would be there, and because he had his attention fixed on guiding the crane through the shop.

J. T. Flynn, the superintendent of the contractor, testified: "To my knowledge that crane runway itself had never been used by any of our men up to this time on the erection of the other two stacks." In answer to a question as to whether there was any practicable way of guying the stack without plaintiff getting in the way of the crane, the witness said: "I am not familiar with just exactly where they had this line tied, but wherever it was, to my knowledge my men had never gotten on this crane runway to tie them up. They had always been tied below the runway." The plaintiff moved to strike out this answer, and the motion was sustained.

Plaintiff's theory of his right to recover is that he was an invitee on defendant's premises; that it was necessary to use the track in erecting the stacks; that defendant knew, or should have known, of that use, and therefore owed him the duty of reasonable protection when he was on the track. The defendant concedes that plaintiff was an invitee, but defends on the theory that its invitation to the contractor did not extend to the use of the track, and that it did not know, and had no reason to suppose, that the track would be used. Defendant also contends that as plaintiff admittedly knew of the danger of his position, he was guilty of contributory negligence in not looking out for his own safety.

Undisputed evidence shows that after the accident, the rope plaintiff was tying was undone from the angle iron and tied to one of the stacks which had already been erected. Consequently, despite evidence to the contrary, the physical fact that the rope was successfully tied elsewhere than to the angle iron demonstrates conclusively that it was not necessary for plaintiff to tie it where he did. Appropriating the angle iron for that purpose may have been convenient, but it was not essential.

Even if that use was not requisite, should it have been expected? If, in erecting the first two stacks, the contractor's workmen had used the track or the interior of the building near the track to such an extent that the defendant knew or should have known of that use, then the defendant would owe them reasonable care, even if that use was not absolutely necessary. The question of contributory negligence depends on that hypothesis. If plaintiff had reasonable grounds to believe that defendant knew of his presence on the track, he had the right to expect defendant to look out for him when operating its crane, and his conduct at the time of his injury would not be negligence *per se*. The situation in that case would be similar to that of a pedestrian crossing the street in front of a stationary automobile. If the pedestrian had reasonable grounds for believing that the operator of the car had observed him, he would not be guilty of negligence *per se* in proceeding on his way without keeping a constant lookout for the car to start. If nothing had transpired,

however, in the prosecution of the work to warrant the belief that defendant knew or should have known that contractor's workmen would be likely to use the track, then the plaintiff was guilty of negligence *per se* in failing to keep the crane under observation.

Therefore the material inquiries are, had the contractor been given permission to use the track; or had it notified the defendant that its workmen would use the track; or had the workmen used the track, or the interior of the main building near the track, in such a notorious manner as to give the defendant notice of such use; or was its use implied from the character of the work being performed? We find no evidence favorable to plaintiff in answer to these inquiries. The record negatives an implied use and is silent as to permission sought or notice given of such use. Neither the plaintiff nor any witness for him testified that he had ever used this track before or that he had ever seen it used by a fellow workman. The record contains only the testimony of Flynn and Turley as to such use. Both of these witnesses say that they had never known of any one using the track prior to the plaintiff. To offset this evidence, plaintiff contends that Flynn's statement about the ropes, "They had always been tied below the runway", when taken in connection with photographs of the interior of defendant's main building, shows that the gin pole and the first two stacks must have been guyed through the windows. He ignores the possibility that the guying was done through the holes in the roof where the stacks were erected. He does not hazard an opinion as to how far below the track or to what objects the ropes were tied. He leaves that to us. If we humor plaintiff's contention, if we wink at the exclusion of Flynn's statement (on plaintiff's own motion), and consider it with the photographs, we note several upright columns which, at a distance of from five to ten feet below the runway, are bare of machinery and to our untrained imagination seem suitable for the use stated. If the ropes were tied to the bare spaces on those columns, it is apparent that use of the windows or the runway in connection therewith was not necessary.

Plaintiff further contends that because the track was dis-
tant from the stacks only a few feet, the proximity of these
objects was sufficient to put defendant on notice that during
the progress of the work use would likely be made of the
track. Plaintiff's contention overlooks the fact that the win-
dows of the main building are about five feet above the shed.
Despite proximity, the track and the stacks are thus separated
by a wall of the building five feet in height, a wall difficult
to scale and which furnished adequate protection to those on
the roof from dangers inside the building. The track and
the angle bar were never designed by defendant for use plain-
tiff made of them. Mere proximity without notice is not
sufficient to acquaint defendant that these objects would be
used for a purpose for which they were not intended. Plain-
tiff's contention might apply if the track were in such a
position that workmen on the roof were apt to get on it acci-
dentally. But accidental approach from the shed was impos-
sible, because of the wall of the building. The plaintiff as-
sumed his position inside the building not accidentally but
with deliberation. The record discloses nothing to warn de-
fendant that a workman of contractor would likely climb
through a window and occupy a place so inherently danger-
ous as the track of the crane without either notifying defend-
ant or exercising due care in his own behalf. It is not to be
expected that adults will leave a place of safety and delib-
erately occupy a place of danger.

No matter what sympathy plaintiff's injuries arouse, the
law forbids a recovery by him on sentiment and surmise.
The law requires that he present a case showing that defend-
ant was negligent. Such a case requires proof that defend-
ant's invitation to erect the smokestacks included or implied
the use of the crane track, or that use thereof had been noto-
riously made by the workmen in the progress of the work.
The law is settled on this subject. The duty of the owner to
an invitee as such, extends no further than the invitation.
When the limits of the invitation are exceeded, that duty
ceases. The law expects no care and protection from the
owner in places where the invitee would not reasonably be
expected to go. Divination is not demanded of the owner;

'.and he is not expected to anticipate that an invitee will expand his invitation. "The owner or occupant of premises is liable for injuries sustained by persons who have entered lawfully thereon only when the injury results from the use and occupation of that part of the premises which has been designed, adapted, and prepared for the accommodation of such persons. If a person, although on the premises by invitation, deviates from the accustomed way or goes to a place other than such as are covered by the invitation, the owner's duty of care ceases forthwith." 20 R. C. L. p. 67, Sec. 59. Thompson on Negligence, Sec. 988; Sherman and Redfield on Negligence, Secs. 704, 707; *Smith* v. *Trimple,* 111 Ky. 861; *Hutchinson* v. *Iron Co.,* 141 Mich. 346; *Chat. Warehouse Co.* v. *Anderson,* 141 Tenn. 288; *Urban* v. *Focht,* 231 Pa. 623; *Dooley* v. *Contracting Co.,* 91 N. Y. S. 30; *Bush* v. *Weed Lbr. Co.,* (Cal.) 218 Pac. 618; *Chichas* v. *Grocery Co.,* (Mont.) 236 Pac. 361; *Gavin* v. *O'Conner,* 99 N. J. L.............., 122 Atl. 842, 30 A. L. R. 1383; *Pettyjohn & Sons* v. *Basham,* 126 Va. 72, 100 S. E. 813, 38 A. L. R. 391.

Upon the record the defendant was entitled to a peremptory instruction. As it does not appear clearly that plaintiff cannot present a better case upon another trial, we will not enter judgment here for the defendant, but reverse the judgment of the lower court and remand the case.

*Reversed and remanded.*