A. N. PERRYMAN *v.* MANKIN LUMBER COMPANY

(No. 7480)

Submitted April 19, 1933.     Decided May 2, 1933.

(Rehearing denied June 9, 1933)

*McGinnis, Ashworth & Mann,* for plaintiff in error.

*Carl C. Sanders* and *George W. Williams,* for defendant in error.

HATCHER, JUDGE:

The floor of a Soldiers and Sailors Memorial Building collapsed (in part) at a ceremonial laying of the cornerstone and the plaintiff was injured. He recovered a judgment against the defendant, an independent contractor, and it protests.

The building was in the city of Beckley, and the defendant was employed to construct it by the board of directors of the Memorial Building of Raleigh County. Prior to the ceremony, defendant had erected the basement walls, set the floor joists, and covered part of the floor area with loose boards several inches apart. Signs (five in all) lettered "Keep out except on business" had been posted at the several entrances to the building. The chairman of the Memorial board testified that the American Legion arranged the ceremonies. No formal assent was given by the board, but the sponsorship of the Legion was taken for granted by the board. "It was customary," said the chairman, and he cooperated with the Legion by officially inviting the Masonic Lodge to lay the cornerstone. The Legion published an invitation to the public to attend. The defendant was not consulted about the ceremonies, nor was its permission to lay the stone obtained; but the record shows that it tacitly assented thereto. The defendant had the build-

ing material removed from off the floor boards of the wing where the stone was to be laid. Within the cleared space the boards were nailed down, and chairs were placed for the Masons, the Gold Star Mothers and others specially invited to occupy the floor. Back of the chairs a row of tiling some three feet high was piled between the cleared and uncleared portions of the floor. Back of the tiling the floor was covered with building material, and was not prepared for guests. The defendant's preparation of the floor for the special guests was supervised by the Legion and paid for, as extra expense, by the Memorial board. Some fifteen thousand people attended the ceremony and from six to eight hundred crowded onto the floor of the building. The plaintiff came because of the invitation to the public. He was not a special guest of the Legion and had no part in the program. He entered the building voluntarily to obtain a close view of the ceremonies. He went first upon the prepared part, but at the request of a member of the National Guard moved over behind the tiling to the unprepared part, a section of which (8'x20') gave way almost immediately after he came. There was no structural defect in the section which fell. The collapse was caused solely by the press of the throng upon an interior wall. The part prepared for the specially invited guests was not affected.

Plaintiff presents nine propositions of law to sustain his judgment. His law is sound but not applicable to the facts. Eight of his propositions relate to the duty of the owner or occupier or the one in charge of property to invitees. The defendant was not the owner of the building and for the time being was not occupying or in charge of it. The defendant's possession of the building had yielded temporarily to that of the Legion acting for the titular owner, the Memorial board. The defendant invited no one to be present, did nothing to convene the multitude, performed no work whatever on the building during the ceremony, and took no part in it. Some of defendant's employees were present but they came merely as spectators, with two exceptions—the Masons were not familiar with the derrick which handled the cornerstone, and at the request of and for the accommodation of the Masons the defendant's superintendent and foreman operated the derrick. The Legion was sole host of the assembly.

The plaintiff's assumption that he had the right as a general invitee to enter the building is not sound. He says he did not see the posted signs, received no warning of danger and that the floor was not roped off. He was a mature and intelligent man, and should have recognized without sign, warning or rope that the building generally was not prepared for the crowd. We do not overlook his testimony that he "saw no difference" in the condition of the floor where he was injured and the floor elsewhere. That testimony must have been inadvertent, for he did see the chairs arranged on one section of the floor, and did notice that stone and building material were piled at his feet and all around where he was standing. He also noticed scaffolding about the building. Everything there within his observation demonstrated the unfinished and impermanent state of the construction. Strong circumstances are requisite to imply an invitation to the public generally to occupy a floor under those conditions, and such circumstances are lacking. Counsel stressed the evidence that people were sitting on the stones within the unprepared part and counsel contended that the piles of stone were invitations to the crowd. In ancient times the stone of Bethel did invite Jacob to repose, but we have no modern precedent of like allurement. Counsel place some reliance on the fact that the guardsman directed plaintiff to move to the place which collapsed. Obviously the guard represented the Legion and not the defendant in directing the movements of the crowd, and the defendant is not accountable for such misdirection. There is no evidence whatever that defendant acquiesced in the occupation of the unprepared part of the building by the crowd, or that it intended such use. "The gist of the liability," in such cases, said the supreme court of Massachusetts in the leading case, *Sweeny* v. *R. R. Co.*, 87 Am. Dec. 644, 648, "consists in the fact that the person injured did not act merely for his own convenience and pleasure and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors * * * and that such use *was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way*

*or place was adopted and prepared or allowed to be used."*
(Italics ours) The *Sweeny* case was approved and applied
in our own case of *Woolwine* v. *Ry. Co.*, 36 W. Va. 329, 335,
15 S. E. 81 and *Johnson* v. *Fuel Co.*, 166 S. E. 118, 119-120.
An announcement of a public speaking or public entertain-
ment is not taken as a general invitation to the public to
occupy the speakers' stand or the place where the entertainers
perform. No more can plaintiff claim that he was invited to
occupy the building merely because he was invited to witness
a performance at the building. The section which fell had
not been designed, prepared, or designated for his reception.
It is settled that guests have no right at law to broaden the
scope of their invitation. This restriction is well illustrated
by our case of *Roberts* v. *Kelly Axe Co.*, 104 W. Va. 452,
457-8, 140 S. E. 283, and authorities there cited.

Since the Legion had undertaken the entire management
of the ceremony, defendant had the right to assume that the
Legion would take steps to control the crowd. The assumption
was seemingly confirmed at first by the fact that a cordon of
the National Guard was stationed around the sides and rear
of the building. But when the Guard permitted the people
generally to enter the unprepared part of the building, the
president of defendant realized the emergency and requested
the aid of the state police to warn the people to get off. The
defendant's president and two policemen were attempting to
do so at the very time of the accident. The defendant's presi-
dent testified: "I happened to be in the particular portion
myself. I warned the people to get out of there and had a
state policeman warn them to get out, but you couldn't do
a thing with them." One policeman testified: "We told the
people to stay away, stay off the building, but we would turn
and our attention was directed to something else, why of course
there was such a crowd there that they just went back up on."
The other policeman said, "We spoke to them. We had to
take some of them and shove them back; shove them away.
* * * I was down there when the crash happened." What-
ever defendant's duty on that occasion, it was not chargeable
with notice that the people would ignore the prohibitory signs
around the building, disregard the signals of danger perfectly
obvious to adult senses, and crowd heedlessly into an unpre-

pared and unfinished building over the warning of policemen. The conduct of the people evidenced a psychology, not to be anticipated at so orderly a function as the laying of a corner-stone. .Defendant did all that could reasonably have been expected after the emergency arose.

Plaintiff's ninth proposition relates to joint tort feasors. At the place plaintiff was injured he was a mere volunteer (as to defendant) pursuing his own convenience and pleasure, and was not induced thereto by any act or sign of defendant. He was not in the building as an invitee of defendant. "Their relation to each other was that of third persons." *Overstreet* v. *Security Co.*, 148 Va. 306, 138 S. E. 552. Consequently no duty rested on the defendant to provide against the act of plaintiff, and defendant was not guilty of a tort.

The plaintiff contends that under any view he should be regarded as a licensee. The law defining the position of a licensee is fully stated in the opinion in *Converse* v. *Walker*, 30 Hun. (N. Y.) 596, 600. That case is comparable to this in several material points but the facts there were more favorable to that plaintiff than the facts here are to this plaintiff. That was an action against a hotel proprietor. To escape a sudden storm, a large number of people—many of whom, including plaintiff, were not guests of the hotel—sought refuge on the piazza of the hotel. The piazza was built upon posts, one of which had been removed before this incident. As soon as the defendant saw the concourse of people on the piazza, he did what he could to warn them of the danger, but they congregated in such numbers that the weakened support could not withstand the weight and the floor gave way, injuring the plaintiff. The court held that the defendant was not negligent, saying:

> "All the cases in the books in which a party is sought to be charged on the ground that he has caused the * * * place * * * or suffered it to be in a dangerous condition, whereby accident or injury has been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. * * * So a licensee who enters on premises by permission only without any enticement, allurement or inducement being held out to him by the owner or oc-

cupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who go there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon the grounds for the purpose for which the premises are appropriated and occupied, by some preparation or adaptation of the place for use by customers or passengers which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." Accord: Sherman & Redfield on Negligence (6th Ed.) sec. 705.

So, even as a licensee, the plaintiff has made no case against the defendant. The judgment of the lower court is therefore reversed, the verdict set aside, and a new trial awarded the plaintiff.

*Reversed; verdict set aside; new trial awarded.*