**HOLCOMBE v. BUCKLAND et al.**
No. 4955.

Circuit Court of Appeals, Fourth Circuit.
Aug. 18, 1942.

Homer A. Holt, of Charleston, W. Va. (Wm. T. O'Farrell and Brown, Jackson & Knight, all of Charleston, W. Va., on the brief), for appellant.

F. N. Bacon, of Fayetteville, W. Va. (S. C. Higgins, Jr., and Mahan, Bacon & White, all of Fayetteville, W. Va., on the brief), for appellees.

Before SOPER and NORTHCOTT, Circuit Judges, and TIMMERMAN, District Judge.

SOPER, Circuit Judge.

Separate suits brought by Clay Wilson Buckland and Charles Doss against George C. Holcombe to recover damages for personal injuries were consolidated and tried together in the District Court and resulted in judgments of $7,000 for Buckland and $5,000 for Doss. The defendant appealed, complaining that the District Judge erred in refusing to direct a verdict in his favor and in refusing certain instructions offered by him for submission to the jury.

The facts with respect to the accident that caused the injuries were the same in both cases. The plaintiffs were employees of the Hughes-Foulkrod Company which had a contract with the owner for the construction of the brick work and roofing of the building in which, before completion, the accident occurred. Holcombe, the defendant, had another contract with the owner for the installation of the structural steel and the installation of a monorail track along one side and both ends of the building to be used in the support and movement of a small steel cage. The build-

ing was 460 feet long, 100 feet wide and 66 feet high to the eaves. The track extended 660 feet and was supported at a distance of 30 inches from the eaves outside the building. The cage was designed for the carriage of men engaged in washing windows that comprised 40 per cent of the surface of the walls. The track consisted of 33 rails, 20 feet in length, joined together end to end. Each joint was formed by two plates, that is, a fishplate on top consisting of a small flat piece of metal fastened by bolts to the rails to prevent vertical displacement, and a cog connection beneath to prevent lateral displacement. The cage was secured to trolleys that ran on the track. It could be raised or lowered by the operation of the lever inside and could be moved parallel to the walls by a person inside pushing against the wall, or by means of a rope pulled by a person on the ground.

The defendant had completed the monorail and cage, and it had been used with his knowledge before the accident took place. Later, three of the rails were removed by the defendant to enable him more conveniently to perform other construction work under his contract. Subsequently, he replaced the rails but failed to replace the fishplate at one of the joints because it could not be found. During the period when the rails were removed, the defendant placed a rope barrier to prevent the cage from running off the track at the breach; but this barrier was removed after the rails were replaced and before the accident happened. At the time of the accident, the equipment, consisting of track and cage, had been left by the defendant in an incomplete state, and construction work was still being performed by him and others.

On June 6, 1941, while the track was in this defective condition, the plaintiffs were using the cage under orders of their employer in washing the walls of the building. While doing so the cage fell by reason of the absence of the fishplate and the plaintiffs suffered the injuries complained of. It will have been noticed that the plaintiffs were not employees of the defendant, but of another contractor engaged by the owner to perform construction work entirely independent of that which the defendant was under contract to erect. The circumstances under which the plaintiffs used the cage have therefore an important bearing upon the legal questions involved in the case. There is no doubt that the defendant

knew that the plaintiff and other persons not in his employ were making use of the cage for their own purposes, and permitted them to do so while the track was in the faulty condition described. Employees of the Telephone Company used the cage to install a cable on June 2, 3 and 4, passing over the weak point several times without injury. The plaintiffs themselves had also used the cage on days immediately prior to the accident and had crossed the weak point a number of times before the cage fell with them on June 6, when it was stopped near the defective joint. While there was some testimony to the contrary, the evidence of the plaintiffs clearly showed that they had no knowledge of the defective condition of the rail, and that the defect was not easily observable and that they were not warned that it was dangerous to use the equipment. It is not disputed that the defendant had knowledge that the fishplate was missing and that the track was therefore not in proper condition to be used.

The position of the defendant with respect to the crucial question in the case is that the plaintiffs were at most bare licensees in the use of the cage and monorail, and therefore the defendant owed them no duty to maintain the equipment in a safe condition for their use and convenience. The defendant refers to 38 Am.Jur., Negligence, § 104, citing Sohn v. Katz, 112 N. J.L. 106, 169 A. 838, 90 A.L.R. 880, as authority for the rule that a contractor or sub-contractor engaged in work upon a building, as well as the owner thereof, is entitled to invoke the rule limiting the obligation to look out for the safety of a licensee:

We are referred to a number of West Virginia decisions in which little or no distinction is made between the duty or obligation of an occupant of premises to a trespasser and his duty to a bare licensee. In Perryman v. Mankin Lumber Co., 113 W.Va. 848, 853, 169 S.E. 462, 464, the court cited with approval the following passage from Converse v. Walker, 30 Hun, N.Y., 596, 600: " 'All the cases in the books in which a party is sought to be charged on the ground that he has caused the * * * place * * * or suffered it to be in a dangerous condition, whereby accident or injury has been occasioned to another, turn on the principle that negligence consists in doing or omitting to do

an act by which a legal duty or obligation has been violated. * * * So a licensee who enters on premises by permission only without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who go there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon the grounds for the purpose for which the premises are appropriated and occupied, by some preparation or adaptation of the place for use by customers or passengers which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon.' Accord: Sherman & Redfield on Negligence (6th Ed.) § 705."

In Dickinson v. New River & Pocahontas Consol. Coal Co., 76 W.Va. 148, 85 S. E. 71, the court went so far as to say that the occupant of premises owes no duty to trespassers or bare licensees except abstention from intentional injury, and that in the absence of maliciousness or intentional injury the decisions of the State recognize no distinction between acts of commission or omission on the part of the owner of the premises, whereby injury to such persons is occasioned. See, also, Ross v. Kanawha & Michigan Ry. Co., 76 W.Va. 197, 85 S.E. 180.

But these cases give only an imperfect view of the West Virginia decisions on this branch of the law. The Supreme Court of West Virginia has not altogether ignored the distinction sometimes drawn between mere passive neglect in the care of premises upon which a licensee has been permitted to enter and actual misconduct or neglect bringing about his injury after his arrival. See, Woolwine's Adm'r v. C. & O. R. Co., 36 W.Va. 329, 333, 335, 336, 15 S.E. 81, 16 L.R.A. 271, 32 Am.St.Rep. 859; and see also the cases cited in Am.Jur. on Negligence, § 104, to which, as shown above, the defendant has referred for another purpose. Judge Lurton pointed out this distinction quite clearly in Felton v. Aubrey, 6 Cir., 74 F. 350, 358, 359, in the following passage: "It seems to us that many of the American cases which we have cited fail to draw the proper distinction between the liability of an owner of prem-

ises to persons who sustain injuries as a result of the mere condition of the premises and those who come to harm by reason of subsequent conduct of the licensor, inconsistent with the safety of persons permitted to go upon his premises, and whom he was bound to anticipate might avail themselves of his license. This distinction seems to be sharply emphasized in the case of Corby v. Hill, (4 C.B.(N.S.) 556), and is a distinction which should not be overlooked. If there be any substantial difference between the legal consequence of permitting another to use one's premises and inviting or inducing such use, the distinction lies in the difference between active and the merely passive conduct of such a proprietor. It may be entirely consistent with sound morals and proper regard for the rights of others that the owner of premises should not be held liable to one who goes upon another's premises for his own uses, and sustains some injury by reason of the unfitness of the premises for such uses, not subsequently brought about by the active interference of the owner. If such person goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which pertain to the situation. But, on the other hand, if, with knowledge that such person will avail himself of the license, the owner actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger to be encountered."

See also, Ellsworth v. Metheney, 6 Cir., 104 F. 119, 51 L.R.A. 389; Murch Bros. Constr. Co. v. Johnson, 6 Cir., 203 F. 1; Brigman v. Fiske-Carter Constr. Co., 192 N.C. 791, 136 S.E. 125, 49 A.L.R. 773, and note.

In West Virginia and elsewhere, there are numerous cases in the books in which the rule is disposed of by the brief statement that there is no duty toward a bare trespasser or licensee except to refrain from willful or wanton injury. Ritz v. City of Wheeling, 45 W.Va. 262, 265, 31 S.E. 993, 43 L.R.A. 148; Strough v. Central R. Co. of New Jersey, 3 Cir., 209 F. 23. In other cases it is said that an owner of premises is required to exercise ordinary care to avoid injury to a trespasser or bare licensee after it has been ascertained that

he is in a position of peril. In Huff v. Chesapeake & Ohio Ry. Co., 48 W.Va. 45, 49, 35 S.E. 866, 868, the court quoted with approval from Elliott on Railroads § 1250 with respect to those who are real licensees to use a railroad track as a footpath as follows: "The better rule is that the licensee takes his license subject to its concomitant perils, and the licensor owes him no duty, except to refrain from willfully or wantonly injuring him. * * * It seems to us that the only duty which it owes to such person, whether trespassers or bare licensees, is not to willfully or wantonly injure them, but to use reasonable care to avoid injury to them after their danger is discovered." The converse of this situation was treated in a more recent decision in West Virginia, Evans v. Carter Coal Co., 121 W.Va. 493, 5 S.E.2d 117, 118, where it was held that an employee of a coal company who had been standing on top of a railroad car to repair his radio aerial could not recover for injuries from a fall caused by the negligent jolting of the car, although the Coal Company knew that its employees were in the habit of crossing the railroad tracks to procure spring water. The court commented upon the fact that the plaintiff, when injured, was not in a position which the company should reasonably have anticipated and made the following statement as to the duties of a licensor to a licensee. The court said: "Defining the duties of a licensor to a licensee has proven difficult. Pollock, Torts, 13th Ed., pp. 543, 548; 45 C.J., Negligence, § 201. But whatever those duties, the law is settled that the only one extending beyond the scope of the license to a position on the licensor's property where the licensee would not reasonably be expected, is to abstain from willfully injuring him; he has then become, in legal effect, a trespasser. Restatement, Torts, vol. 2, § 341, par. b, p. 931; 20 R.C.L., Negligence, § 59; Garland v. Boston & M. R. R., 76 N.H. 556, 86 A. 141, 46 L.R.A., N.S., 338, 339, 342, Ann.Cas.1913E, 924; Roberts v. Kelly Axe & Tool Co., 104 W.Va. 452, and authorities cited on page 458, 140 S.E. 283; Perryman v. Mankin Lbr. Co., 113 W.Va. 848, 169 S.E. 462. The injury to the instant plaintiff is not shown to have been willful."

See also, Musto v. Lehigh Valley R. R., 327 Pa. 35, 192 A. 888, 112 A.L.R. 842.

In all of these formulae there is manifest an effort on the part of the courts to express the idea that a licensee is not entirely outside the pale of the protection of the law and that situations frequently occur in which the ordinary requirements of humanity give rise to a duty on the part of an occupant of premises to look out for the safety of one who comes upon the premises with the permission of the occupant. The matter is treated in § 341 of the Restatement of Torts cited with approval by the West Virginia Court in the quotation from Evans v. Carter Coal Co., above set out, and in other sections of the Restatement more pertinent to the facts of the instant case. Therein no special reference is made to active or passive negligence and in place of the words "willful or wanton misconduct" the Restatement employed the phrase "conduct in reckless disregard of the safety of others". See Restatement Torts, § 336, p. 916. Special Note.

■ Section 342 sets out the rule applicable to dangerous conditions known to the possessor of property, as follows:

"§ 342. Dangerous Conditions Known to Possessor.

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein."

■ This section is especially applicable to the case made by the plaintiff's witnesses. According to them the defendant knowingly failed to replace the fishplate at the joint in the monorail, thereby creating a condition which it realized involved an unreasonable risk that the plaintiffs could not reasonably be expected to discover. Nevertheless, the defendant made no effort to correct the defect or to warn the plaintiffs of their danger. No argument is needed to show that it would not be consistent with sound morals to exculpate from all liability one who manifests so little regard for the rights of others, and in this instance the dictates of morality find a sanction in the established rules of law. There was no er-

ror in the refusal of the District Judge to direct a verdict for the defendant.

The appellant also contends that it was prejudiced by that part of the judge's charge which related to the questions of assumption of the risk and contributory negligence, because the jury were told that these defenses were not available unless the plaintiffs had knowledge that they might fall if they used the cage. But this statement does not fully portray the substance of the charge in this respect, for the jury were expressly told that the plaintiffs were chargeable not only with what they knew, but with what, by the exercise of reasonable care, they could have known.

Objection to comments upon the facts made by the District Judge in his charge is also without substantial merit. The charge as a whole was temperate in tone and lucid in expression, and was full and fair to both sides. It contained the usual warning that the jury was not bound by anything the judge might say with respect to the evidence. The part of the charge objected to was delivered when the jury returned to the court room after retiring, and asked for the reading of the testimony of certain witnesses for the defendant which tended to show that the plaintiffs had knowledge of the condition of the rail when they made use of the cage on the day of the accident. The request was granted and the testimony of the witnesses was read. The plaintiffs' attorney then asked that the testimony of other witnesses be also read, whose testimony he thought to be in conflict with that which the jury had just heard. This request was refused but the court stated that there were other witnesses in the case whose testimony in some parts was in conflict with the testimony that had just been read. This comment of the court is objected to on the ground that there was no clear conflict between the two portions of the testimony and that therefore the matter was one for the determination of the jury. In our opinion there was no error in this respect. The testimony on the point was not all one way and the judge explained to the jury that his comment was made in order that they might recall not only the portions of the testimony that had been re-read for them, but also other testimony on the point for such consideration as they should care to give to it; and he cautioned them again that they were the ones to decide what weight should be given to the evidence at all stages of their deliberations. See Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263.

Affirmed.