JIM JOHNSON, *Admr. v.* UNITED FUEL GAS COMPANY

(No. 7388)

Submitted September 28, 1932. Decided October 4, 1932.

*Lafe B. Chafin,* for defendant in error.

*Goodykoontz & Slaven, W. C. W. Renshaw, Harold A. Ritz* and *B. J. Pettigrew,* for plaintiff in error.

HATCHER, PRESIDENT:

The defendant seeks here to reverse a judgment of $10,000.00 rendered in the circuit court against it because of alleged negligence in connection with the death of Mrs. Agnes Johnson.

According to evidence of the plaintiff, Mrs. Johnson was in the city of Logan on Friday, November 6, 1931. About ten P. M. that evening, she decided she would visit her children, who resided with their father (from whom she was estranged) on Jenny's Creek in Mingo county. She mentioned the visit to Robert Arthur, who borrowed a coupe for the trip. The car was without fuel, but at her request Bill Bartram bought the gasoline. Then Mrs. Johnson, Bartram, Arthur and the latter's son, Elmer, started in quest of the Johnson home. All four rode on the front seat of the coupe, the woman sitting by turns in the laps of Bartram and Elmer. None of the men had ever been on Jenny's Creek, but Mrs. Johnson said she knew the way. They drove up several creeks and down others, had some tire trouble, missed the road at the mouth of Jenny's Creek, and when they did get back on the right road, they drove by the Johnson house, and continued several miles up the creek until they came to Snake Root Branch. An open road as good as or better than the one along the creek came down the branch, so they turned into it. After proceeding about 1900 feet up the branch, they were stopped by a bunch of wire and spools of rope ahead. Mrs. Johnson concluded they had gone too far, and stepped on the running board to investigate. Robert Arthur lit a cigarette and threw the match out and then in the language of the men "a wonderful fire started * * * flashed up all of a sudden * * * the whole air was full of flames * * * when the fire blowed up, it flamed, I guess a hundred feet high in the air, * * * the whole hollow seemed to be burning." The men abandoned the coupe and managed to escape, but Mrs. Johnson received burns from which she died. The fire occurred shortly before daylight. When it subsided, the coupe was found to be seventy-eight feet from an oil well of defendant, situated on the edge of the road.

580

The well was being cleaned out and deepened. On Wednesday before this casuality, a quantity of oil and water had been bailed out of the well and poured down through the rig into the branch. The well was producing some gas, but in too small quantity to be measured or utilized. When work stopped Friday, burlap was wrapped around the base of the bailer, its valve was opened and it was set into the mouth of the well. The bailer is a cylindrical tube about thirty feet long, and when so attached to the well, acted as a flue and carried the gas some twenty-five feet high into the air. For many years there had been a foot and riding path up the branch and across a dividing ridge to Turkey Creek. This path was used as a short cut frequently by a few people living on the two creeks and at intervals by others. The road was constructed partly on the path. One witness said there was fog the morning of the conflagration; another said the morning was cold and frosty. An expert said fog would sometimes press a light flow of gas down to the ground and he had known of four explosions which he attributed to gas forced down by fog.

The defendant showed without controversy that the well was in a very sparsely settled section—only one family living on the entire watershed of the branch; that the road from Jenny's Creek up the branch was a private way, built by the defendant for its own purposes; that the old path referred to left the road some thirty yards below the well and went around the hill about fifty yards above it; that oil operators customarily poured out oil (as had been done on Wednesday) when the well was in an isolated place; that the volatile part of oil so exposed soon evaporates, and then the oil will not burn unless warmed; that on Saturday pools of oil around the well which had escaped the conflagration, would not ignite from a match; that the disposal of gas through a bailer (as practiced by defendant) is the only precaution ever taken by operators when the quantity of gas is small; and that in many years' experience, none of the defendant's employees had known of gas, thus disposed of, becoming ignited except once when a rig had been struck by lightning; that an open forge had been operated daily within fifty feet of the well; that

the Johnson coupe passed a house at the mouth of the branch at three A. M., with its occupants "cussing and going on"; and that the explosion occurred between five and six A. M.

Two witnesses for defendant testified that the Johnson party spent quite a while at the well "laughing and hollowing and having a big time", and seemingly engaged in a drunken revel; and that shortly before the explosion, they saw Mrs. Johnson secure some sacking from the derrick and one of the men gather bark and chips with which a fire was kindled. The witnesses started away then, and in a few moments, noticing a big blaze, departed thence. The men with Mrs. Johnson deny kindling a fire and say the conflagration started right after they drove up to the well, and while they were still in the coupe. They do not deny that they were all drinking, and they offer no explanation of why they consumed two hours in proceeding from the mouth of the branch to the well—a distance of only 1900 feet.

Plaintiff's counsel contend (1) that long usage by the public of the path up the branch prevented Mrs. Johnson from being a trespasser; (2) that the improved road up the branch was an invitation; (3) that the oil and gas at the well had not been properly guarded; and (4) that the explosion was one within reasonable anticipation.

1. The first contention undoubtedly would be sound had Mrs. Johnson followed the path. And it is not necessary to decide whether her status as licensee ended when she proceeded on the road so short a distance (twelve feet) beyond the point where the path diverged from the road. Let us regard her as a licensee. The law is settled that an owner is under no duty to do more for a gratuitous user of his property than he does for himself. Therefore, one who permissively enters property, but without invitation or inducement from the owner ordinarily enters at his own risk and must take the premises as he finds them. See the leading case of *Sweeny* v. *Railroad Co.*, 10 Allen (Mass.) 368, 87 Am. Dec. 644, and *Woolwine's Admr.* v. *Railroad Co.*, 36 W. Va. 329, 15 S. E. 81.

2. Counsel would avoid the above rule on the theory of invitation. No authority is cited supporting this position,

and we have found none. It would be going far indeed to hold that a private road is an invitation to travelers on a public road to leave it, merely because the former is as good or better than the latter. Such a holding should be considered only in very exceptional cases.

3 and 4. If it be conceded that this instance is so exceptional as to imply an invitation, the defendant failed not in its duty to an invitee. Such duty was to use *due care* to make the premises safe. Due care is a relative term and always depends on time, place and other circumstances. *Dicken* v. *Salt & Coal Co.*, 41 W. Va. 511, 23 S. E. 582. The care must be in proportion to the danger apparent and within reasonable anticipation. "Due care in a particular instance depends upon the existing danger—the care required increasing with increase of danger." Thornton Oil & Gas (Willis), sec. 1080; 12 R. C. L., subject Gas, sec. 46; 28 C. J., subject Gas. sec. 56; *Barrickman* v. *Oil Co.*, 45 W. Va. 634, 32 S. E. 327; *Morrison* v. *Power Co.*, 75 W. Va. 608, 612, 84 S. E. 506. Defendant had taken the same precautions to avert danger at this well which it had taken and found adequate at its other wells. Its precautions were the same taken by all oil and gas conpanies, when engaged in similar work. Its conduct therefore meets what has been declared to be the "unbending test" of due care, namely, the usage and custom of the business. *Owen* v. *Power Co.*, 78 W. Va. 596, 605, 89 S. E. 262. Defendant's representatives had no information that this usage had ever failed to dispose of the gas safely. There is no evidence that defendant had notice of the road near the well ever being used by strangers, either at night or any other time. There is no evidence from which one could say that when work ceased on Friday, defendant should have anticipated that during the night the danger from the gas would increase. *Donald* v. *Coal Co.*, 86 W. Va. 249, 253, 103 S. E. 55. With no such evidence, but with evidence to the contrary, counsel's third and fourth contentions are without substance.

The judgment of the lower court is accordingly set aside, and a new trial awarded the defendant.

*Reversed; new trial awarded.*

Since the above opinion was handed down, we have found a well considered case which supports our holding on the contention of invitation, as follows: "Where the defendants opened a paved private way into a public street without putting up any sign to notify travellers that the passageway was not a public way, and the plaintiff, who was not shown to have any right in the passageway unless as one of the public, while on his way to premises beyond those of the defendants, was injured by· driving over a curbstone in the passageway hidden by snow, no active force being used against him, it was held that the plaintiff was at most but a licensee, and went upon the defendants' land at his own risk." *Stevens* v. *Nichols,* 155 Mass. 472.