Joseph W. **HARNER**, Plaintiff,

v.

**SOMERSET STEEL ERECTION COMPANY, Incorporated, a corporation, and John McShain, Inc. of Maryland, a corporation, Defendants.**

**Civ. A. No. 856.**

United States District Court
N. D. West Virginia,
Fairmont Division.

Sept. 15, 1967.

Clark B. Frame, Morgantown, W.Va., for plaintiff.

Albert M. Morgan, Morgantown, W. Va., for defendants.

## MEMORANDUM

CHRISTIE, District Judge:

There is presently before the Court the Motion of Defendant John McShain, Inc. to set aside the verdict and judgment entered thereon in the above entitled case on March 10, 1967, and to enter judgment in its favor, notwithstanding the verdict.

A similar Motion was made by McShain's co-defendant Somerset Steel Erection Company, but the case has since been dismissed as between the plaintiff and Somerset on a negotiated settlement, and it is, therefore, now unnecessary to rule on this Motion.

I have no difficulty in finding that there was sufficient evidence adduced by the plaintiff to require submission to the jury of the question of primary negligence—against Somerset for leaving unfastened the section of the lath or mesh for some six or seven days (T–73), and against McShain for not taking effective measures to correct or remove the hazard after it was discovered. McShain's general superintendent, Kenneth Thorn, testified that he saw the unfastened end of the lath one or two days before the accident (T–20), recognized the danger it posed (T–22) and called it to the attention of Somerset's Foreman Walker (T–24), but that he did not warn the plaintiff or any of the other workmen (T–24), and the inference is clear that he did not follow up to see if Foreman Walker corrected or removed the danger. Thorn further testified that he had control of the job (T–7) and

that his company assumed the duty and obligation of warning others on the job of the presence of any known dangers or unsafe conditions (T–25).

The mere act of Thorn calling the unsafe condition to the attention of Somerset's foreman, without more, did not, under the circumstances, discharge McShain's duty to the plaintiff, and the jury was justified in finding primary negligence against McShain as well as against Somerset.

The question of plaintiff's contributory negligence is more complex. I, of course, recognize that the general rule is that the question of contributory negligence is for the jury when it arises upon a state of facts from which reasonable men might draw different conclusions either as to the facts or the conclusions or inferences to be drawn from the facts. 38 Am.Jur. Negligence, Sec. 348, at 1052 (1949). Of equal force is the rule that where the material facts are undisputed and only one inference may be drawn from them by reasonable minds, the question of contributory negligence is one of law for the Court.

In resolving the motion, although the governing substantive law of West Virginia is to be applied in this diversity action, the question of the sufficiency of evidence is a matter of federal law. General Motors Corp. v. Muncy, 367 F.2d 493 (5th Cir. 1966).

The plaintiff testified, (T–149):
"I come out here on this beam and put his (Jim Hill's) paint down some place along in here. He was in here some place. I started back, and I stepped on the mesh over here and took a couple of steps and I fell right in here."

Then at pages 188 and 189 of the transcript the plaintiff testified:

"Q. * * * Was there any reason why you didn't stay on the beam, so to speak, and get on the double beam and turn right and walk down to where it was safe?

"A. There was no reason why. I stepped down to go over to him to tell him I brought his paint.

"Q. Then you kind of took a shortcut then from the beam where they join and got—tired to get on the lath, is that correct?

"A. Yes."

This demonstrates that the plaintiff could have safely returned on the beam and that his stepping on the lath or mesh was by choice rather than by necessity, thus, making applicable the general rule that, "One having a choice between methods of doing an act which are equally available, who chooses the more dangerous of the methods, is ordinarily deemed negligent, in the absence of a showing of the existence of an emergency, sudden peril, or other circumstance justifying such choice." 38 Am.Jur. Negligence, Sec. 193.

On the crucial question of whether he looked before he stepped on the lath or mesh, he testified at page 152 of the transcript as follows:

"Q. Did you observe it before you fell?

"A. Observe what?

"Q. The specific piece of lath, were you looking down or looking ahead?

"A. I was walking like I always do, I wasn't watching my feet."

Though the plaintiff did testify under questioning of the Court that he *doubted*, if he had looked, he would have seen that the mesh or lath was unfastened, without getting down on his knees (T–193), it is undisputed that the accident occurred on the third or top floor (no roof, outside walls or other obstruction to light) in the early afternoon of a bright sunny day in June, when visibility was near perfect. Plaintiff's son, Keith, so testified (T–99–100). Under such circumstances, plaintiff's testimony that he doubted if he would have seen the unsafe condition of the lath or mesh had he looked, has little or no probative value. Moreover, such equivocation be-

comes less credible when one examines the photographs of the lath or mesh and the wiring used to fasten or tie the same to the bar joists. (See plaintiff's Exhibits Nos. 2 and 12 for example). The most casual observation would have disclosed the absence of the tie wire. Also the fact that Mr. Thorn saw the hazardous condition one or two days before the accident and called it to Walker's attention (T–21) is another circumstance demonstrating that it was not hidden or otherwise unobservable to the naked eye.

■ Under West Virginia law the failure of one seeking damages for the negligence of another to exercise due care for his own safety, if such failure proximately contributed to the injury, however slight, bars recovery. This simply means that the plaintiff, in the circumstances of this case, was required to exercise that degree of care usually exercised by an ordinarily prudent person of like intelligence and experience under like or similar circumstances. The care required to be exercised must, of course, be commensurate with the exigencies and circumstances of the particular occasion.

The plaintiff was a mature and an experienced construction worker (T–144–145). He had been on this particular job since March—some three months before the accident (T–146). He thus had had every opportunity to become familiar with the construction and the potential hazards incident to his employment. Moreover, in the scheme of his union contract, he was classified as the "steward" on the job (T–143), which position placed upon him certain duties, among which was the duty to check the working place of his craft and to see that it was safe. This was testified to by plaintiff's witness Sickles, the union representative (T–138, 143–144) and by witness Thorn (T–52), and Sickle left the clear inference that if an unsafe condition was left by the lath workmen, it was the plaintiff's duty as the steward of the painters to rope off the area (T–

139). The plaintiff made no outright denial of this testimony other than to say that if such was his duty, he was unaware of it (T–180–181).

■■ That visibility at the time and place of the accident was excellent is undisputed, and the fact that the unfastened section of the lath or mesh through which the plaintiff fell was open and obvious to the naked eye is clearly established. Under such circumstances, it would be contrary to human experience to say that an ordinarily prudent person, with the experience and intelligence of plaintiff, through the use of his ordinary senses, would not, in the exercise of reasonable care, have seen and observed the hazard. Thus, plaintiff's failure to effectively look before he stepped from a place of safety onto the unfastened lath, in the circumstances of this case, was contributory negligence as a matter of law, under the general rule that "prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a dangerous act or operation, to exercise them for the purpose of discovering and avoiding the peril." 38 Am.Jur. (Negligence) Sec. 191, p. 868. See also 13 M.J. (Negligence) Sec. 24, p. 536, where the West Virginia rule is stated to be in accord.

■ Analogous is the duty of a pedestrian to look, and look effectively, before crossing a highway, and the failure to do so has been held to be contributory negligence as a matter of law in West Virginia. See the comparatively recent case of Jackson v. Cockill, 149 W.Va. 78, 138 S.E.2d 710 (1964), where it is said in Point 1 of the Syllabus,

"It is the duty of a pedestrian crossing a highway or street to use his eyes effectively to protect himself against impending danger from vehicles, and if he does not do so when he has the opportunity so to do he will be guilty of contributory negligence as a matter of law."

To the same effect is the rule barring recovery to one injured by failing to see

or observe an open and obvious defect in a street or sidewalk. The West Virginia rule in this area is stated in 17 M.J. (Streets & Highways) Sec. 145, p. 650, thusly,

"If a traveler negligently fails to exercise ordinary care and caution for his own safety against defects in a public street, highway or sidewalk which he knows or can readily see are dangerous, and has the opportunity to avoid them, he is charged with contributory negligence and not entitled to damages."

And in the case of Town of Virginia Beach v. Starr, 194 Va. 34, 72 S.E.2d 239 (1952), after declaring that "Where a defect is open and obvious to persons using sidewalk, it is their duty to observe the defect," the Virginia Court went on to quote with approval from the Pennsylvania case of Lerner v. City of Philadelphia, 221 Pa. 294, 70 A. 755, 21 L.R.A.,N.S. 614, which casts upon the plaintiff the burden to show excuse for his failure to see the defect, the language of the Pennsylvania Court in this regard being,

"When the accident occurs in broad daylight, in consequence of an open and exposed defect in the sidewalk, the burden rests upon the party complaining to show conditions outside of himself which prevented him seeing the defect, or which would excuse his failure to observe it."

In the instant case, as we have seen, the accident happened in broad daylight and the only excuse given by the plaintiff for not seeing the hazard was that he was not looking at his feet. This obviously did not meet his legal obligation, for it has been consistently held in West Virginia that one entering upon the premises of another as an invitee has the duty to see and observe that which is open and visible. See, for example, Cooper v. Pritchard Motor Co., 128 W. Va. 312, 36 S.E.2d 405 (1945) and Gilmore v. Montgomery Ward & Co., 133 W.Va. 342, 56 S.E.2d 105 (1949). And in Petros v. Kellas, 146 W.Va. 619, 122 S.E.2d 177 (1961), the Court approved the action of the trial court in granting summary judgment to the defendant where the undisputed facts showed that plaintiff's fall down a stairway was due to her failure to see and observe the wet slippery surface of the treads.

It is, of course, well recognized that the nature of one's work and the potential danger attendant upon the activity of its performance dictates the degree of care required to be exercised in a given situation. Thus, the care used must be in proportion to, or commensurate with, the danger reasonably to be anticipated from the nature of the undertaking. Johnson v. United Fuel Gas Co., 112 W.Va. 578, 166 S.E. 118, 170 S.E. 429 (1932). So it is seen that the plaintiff, in the circumstances of the instant case, was obviously required to use a higher degree of care for his safety than would one walking upon a sidewalk or in a store where in each instance he had a right to assume the way was safe for travel; and even more, perhaps, than would one crossing a street or highway. Consequently, I can apprehend no valid reason why the rule requiring those walking upon sidewalks or in stores or crossing streets and highways to look and observe that which is open and obvious as a condition of recovery for the negligence of another, should not be applicable with even greater force to a workman on a construction job, such as here involved, where by the very nature of his work, his movements from place to place entailed unusual and extraordinary hazards of travel.

Therefore, when the evidence and circumstances are viewed in the light of plaintiff's long experience in construction work, the nature of the work in which he was engaged, the dangers inherent therein, and the special responsibility placed upon him by his union to look out for the safety of his craft, the conclusion is inescapable (and one on which reasonable minds could not differ) that the plaintiff did not on the occasion of the accident exercise the degree of care for his own safety that an

ordinarily prudent person would have exercised in like or similar circumstances.

McShain's Motion must be sustained and the verdict and judgment will accordingly be set aside as to McShain and judgment awarded to it against the plaintiff for its costs.

Counsel may submit an appropriate order making this Memorandum a part of the record.