John A. POWELL, Plaintiff,

v.

UNITED STATES STEEL CORPORATION, a corporation, Defendant.

Civ. A. No. 1051.

United States District Court
S. D. West Virginia,
Bluefield Division.

Nov. 3, 1969.

Jack G. Willard, Gary, Ind., Harry G. Camper, Jr., Bailey, Worrell, Camper & Viers, Welch, W. Va., for plaintiff.

Joseph M. Sanders, Sanders & Blue, Bluefield, W. Va., for defendant.

CHRISTIE, District Judge:

This matter is before the Court upon the motion of the defendant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The defendant grounds the motion upon the premise that there is no genuine issue of any material facts as to plaintiff's contributory negligence, and assumption of risk and that it is, therefore, entitled to judgment as a matter of law.

The injury for which the plaintiff claims damages in this action arose out of these circumstances: As the owner and operator of a tractor-trailer truck, plaintiff took a shipment of sheet steel and other materials from Gary, Indiana, to Gary, West Virginia, for delivery to defendant. The trip was made under a lease arrangement between the plaintiff and Huber & Huber Motor Freight. Because of the weight of the larger items, they could not be unloaded by hand, and upon the arrival of the truck at defendant's supply yard at Gary, West Virginia, the defendant took or undertook to assist in the unloading operation by furnishing a crane and two men, Edgar L. Lawson and Leonard W. B. Finley. The crane was a mobile 5-ton Roust-a-bout, operated by Lawson. Finley assisted by attaching hooks to the items to be unloaded. The larger of the items, and the one causing plaintiff's injury, was a sheet of steel 20 feet long, 8 feet wide, and ¾

inch thick. It weighed approximately 4,-141 pounds. After the hooks were put in place and while the crane was in the act of lifting the sheet of steel from the truck bed, it tilted or shifted toward plaintiff, who was in the bed of the truck at the time, catching and injuring his left ankle.

Essentially, the negligent omissions and acts relied upon, according to the averments in the complaint, are (1) the defendant's failure to assign adequately trained men to do the unloading, (2) the failure of the men so assigned to exercise reasonable care in the premises and (3) the furnishing of defective and inadequate equipment under the circumstances. Contributory negligence and assumption of risk by the plaintiff are pleaded and relied upon by the defendant in bar of the action.

After taking the discovery deposition of the plaintiff, the defendant moved for summary judgment, filing the deposition and also the affidavit of Edgar L. Lawson and Leonard W. B. Finley in support thereof. Lawson, Finley and the plaintiff appear to have been the only witnesses to the incident causing the injury.

The plaintiff testified by his deposition that, although he thought at the time the manner and method used in hooking the sheet of steel was odd, dangerous and unsafe, he made no suggestions to Lawson or Finley of a better or safer way to do it, nor did he voice any protest as to the manner in which the hooks were attached (D–29–31). He further testified (D–32) that despite his recognizing the danger in doing so, he stayed in the truck bed for no other reason than to see that other cargo destined for Atlanta, Georgia, was not damaged by the unloading process. He concedes, however, that his presence in the truck bed would have lent no protection to the remaining cargo if the sheet of steel in question got out of control (D–33).

In regard to the lifting capacity of the crane, he said that properly handled it was capable of lifting 5,000 pounds (D–36), and on the question of the manner in which it was operated and the skill of the operator, he testified (D–36):

"Q. Do you have any reason to believe that it was not properly handled on the day of the accident? I mean the equipment?

"A. No, I believe not. I believe the operator was doing a proper job. It seems like he had proper knowledge of operating the crane."

In attempting to pinpoint the cause of the accident he, at one point, said he didn't know what the cause was (D–34), and, at another, he assigned "failure to have proper facilities in unloading" (D–36) as the cause, explaining that the weight lifting capacity was not "large enough to handle that large size of steel" the way it was hooked (D–39). Then, at p. 45 of his deposition, the plaintiff testified that the crane stalled several times and that it was during one of these times that the steel came back toward him, catching his ankle. Elaborating on this, he said the motor of the crane choked up and died several times while the equipment was being unloaded, yet admitting that throughout the crane's malfunctioning he remained in the truck bed, asked no questions, offered no suggestions and made no complaint (D–50).

In his affidavit, Lawson asserts that he was an experienced and competent crane operator; that the crane had a safe lifting capacity of 5 tons; that it was equipped with safety devices designed to prevent a load while being lifted from falling or losing altitude, in the event its motor died or otherwise failed to properly function; that at the time of plaintiff's injury the crane was in good repair, was operating properly and efficiently, and had adequate and sufficient lifting capacity to lift and handle the sheet of steel which struck and injured plaintiff.

Lawson's affidavit further asserts that the sheet of steel which struck plaintiff weighed approximately 4,141 pounds;

that two hooks were attached to opposite sides of it, one by the plaintiff himself and the other by Leonard W. B. Finley, after which plaintiff called to him "Alright, take it up," that thereupon as the crane began lifting the sheet of steel it shifted slightly toward plaintiff, who had remained in the bed of the truck, causing injury complained of.

Lawson's affidavit also asserts that the motor of the crane did not die at any time during the operation, that following the accident it continued to operate properly without any repairs or adjustments being made thereto, and that in his opinion the shifting of the sheet of steel was due to the hooks not being positioned in the exact center thereof, allowing one end to raise higher than the other.

Leonard W. B. Finley, by his affidavit, corroborates Lawson in all essential detail.

■ While the plaintiff has filed no counter-affidavit under subsection (e) of the Rule, we do not believe his failure to do so justifies its strict application here, since it is shown that the plaintiff had already testified through his deposition and for him to repeat essentially the same facts in a counter-affidavit would be requiring the doing of a useless act. We will, therefore, treat the deposition as tantamount to a counter-affidavit, under subsection (e), insofar as the testimony therein counters the facts set out in the Lawson and Finley affidavits.

The only significant conflict arising from the deposition and the affidavits is the degree of plaintiff's participation in the unloading process and the capacity and suitability of the crane to do the particular job. Lawson and Finley contended by their affidavits that the plaintiff assisted them in attempting to unload the sheet of steel in question and actually attached thereto one of the hooks himself. This is in conflict with plaintiff's own version. He said (D–25) that he did not place any hook to the steel or otherwise assist in the unloading operation. We find no meaningful conflict between the plaintiff and the defendant as to the capacity of the crane. As we have seen, the plaintiff conceded the capability of the crane to lift 5,000 pounds if properly operated. The actual weight of the steel (4,141 pounds) is not disputed, and, as has been pointed out, the plaintiff testified that he believed the operator had the proper knowledge and was operating the crane in a proper manner (D–36). Whether the crane stalled or died during the operation is in dispute, the plaintiff testifying that it did stall and died several times and Lawson and Finley saying it did not. However, the statements in the Lawson and Finley affidavits that the crane had safety devices to prevent its load from falling or losing altitude in the event its motor stalled or died, and that it was the plaintiff who gave the go ahead signal after the hooks were attached, stand uncontradicted and the force of subsection (e) of the Rule must, therefore, be applied to them.

Thus, we have conflicting positions only on the questions of whether the plaintiff assisted in the unloading process and whether the crane malfunctioned and if so, whether it was due to a defective condition of which the defendant was aware or would have been aware by the exercise of due care. A jury could, of course, resolve either or both against the defendant on the issue of primary negligence. The motion cannot, therefore, be granted insofar as primary negligence is concerned. Indeed, we do not understand defendant's counsel insisting otherwise.

■ We will now view the case from the standpoint of contributory negligence and assumption of risk, defenses affirmatively pleaded in bar by the defendant. These terms are closely associated, yet they are not identical; there is a difference between them. Their basic distinction, notwithstanding they may arise under the same state of facts and may even sometimes overlap, lies in the fact that contributory negligence rests in tort and implies the failure of the plaintiff to exercise due care for his own safety. Whereas assumption of risk involves a voluntary choice by the plaintiff

made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care. Thus, in essence, "contributory negligence" is the failure of a plaintiff suffering an injury to exercise due or reasonable care for his own protection which proximately contributed thereto, while "assumption of risk" is where a plaintiff suffering an injury knew of the risk of injury beforehand and voluntarily assumed it. Wright v. Valan, 130 W.Va. 466, 43 S.E.2d 364 at 370.

■ This being a diversity case, the West Virginia substantive law must be applied. West Virginia does not recognize the comparative negligence rule. Eastern Gas & Fuel Associates v. Midwest-Raleigh, Inc., 253 F.Supp. 954 (N.D. W.Va.1966). The law of West Virginia is well settled that the failure of one seeking damages for the negligence of another to exercise due care for his own safety, if such failure proximately contributed to the injury, however slight, is a complete bar to the action, and likewise one who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby completely relieves such other of legal responsibility for an injury resulting from such exposure. Wright v. Valan, supra; Hunn v. Windsor Hotel Co., 119 W.Va. 215, 193 S.E. 57; Matthews v. Cumberland & Allegheny Gas Company, 138 W.Va. 639, 77 S.E.2d 180; Lowe v. Norfolk & W. Ry. Co., 119 W.Va. 647, 195 S.E. 593; Pritchard v. City Lines, 136 W.Va. 278, 66 S.E. 2d 276 at 284; Shanklin v. Allis-Chalmers Mfg. Co. (applying W.Va. law) 254 F.Supp. 223 (S.D.W.Va.1966), affirmed 383 F.2d 819 (4th Cir.).

■■ The plaintiff was a mature and an experienced trucker engaged in hauling heavy steel and was thus familiar with the potential hazards incident to the loading and unloading process (D–9 et seq.). His conduct on the occasion in question must be measured in the light of the danger reasonably foreseeable to one of his experience and training in that particular line of endeavor. Johnson v. United Fuel Gas Co., 112 W.Va. 578, 166 S.E. 118, 170 S.E. 429 (1932). Thus measured, the plaintiff's conduct as shown by the uncontradicted evidence precludes him from recovering because (a) he voluntarily assumed the risk of injury by entering upon the truck bed (a place of potential danger) at the beginning of the unloading operation and (b) he contributed to the injury subsequently occurring by negligently remaining in the bed of the truck after the danger became apparent to him or would have become apparent to an ordinarily prudent person exercising reasonable care.

■ Counsel for the plaintiff urge upon us, however, that the questions of contributory negligence and assumption of risk cannot be resolved by the Court, as a matter of law, upon a motion for summary judgment, but that such issues must be left to jury consideration. This is undoubtedly true where there is a conflict in the evidence as to a material fact or where the facts, though undisputed, are susceptible of different inferences. But where these situations do not obtain, a motion for summary judgment may be appropriately applied in a tort action. Richardson v. Kubota, 337 F.2d 842 (4th Cir. 1969); Bland v. Norfolk & Southern Railroad Co., 406 F.2d 863 at 866 (4th Cir. 1969); Perkins v. Henry J. Kaiser Const. Co., 339 F.2d 703 (4th Cir. 1964); Cf. Berry v. Atlantic Coast Line, R. Co., 273 F.2d 572 (4th Cir. 1960), cert. den. 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960). In Petros v. Kellas, 146 W. Va. 619, 122 S.E.2d 177 (1961), where, under a state summary judgment rule modeled on the federal rule, the West Virginia Court granted the defendant's motion for summary judgment holding plaintiff was barred because of contributory negligence and assumption of risk as a matter of law. The Court stated, 122 S.E.2d at p. 183:

" * * * to resist a motion for summary judgment the party against

**650**

whom it is made must present some evidence to indicate that the facts are in dispute when the evidence of the moving party shows no disputed facts, and that the mere contention that the issue is disputable is not sufficient."

The Court cited with approval the federal cases of Berry v. Atlantic Coast Line R. Co., supra, and Zoby v. American Fidelity Co., 242 F.2d 76 (4th Cir. 1957). Thus, the federal rule is not unlike the West Virginia rule.

As to the *manner and method* used by Lawson and Finley in attempting to unload the truck cargo, the plaintiff must, as above shown, be held accountable for his conduct in staying in the bed of the truck, in a position of danger, after he recognized the faulty manner and methods being used, and failed to voice any objection thereto or to suggest a better or safer way of doing the work. He cannot excuse his conduct in this regard by now contending that it was necessary for him to remain in the bed of the truck to protect other merchandise, in the face of his admission that his presence on the truck could not have in any way protected such merchandise from damage by the 4,141-pound sheet of steel if it got out of control. In regard to the faulty or faultering equipment, the plaintiff is equally vulnerable and must be held accountable for his conduct in remaining in the truck, in a position of danger, after he knew the crane was not functioning properly. It appears that he had ample time to extricate himself after the motor of the crane stalled or died, for he testified that this occurred "several times" before the occurrence of the accident causing his injury (D–45). Under these circumstances, he must be held to have acquiesced in whatever dangers the unloading operation posed.

Finding as we do that there is no genuine issue as to any material fact respecting plaintiff's contributory negligence and assumption of risk and that the evidence establishes such defenses as a matter of law, the defendant's motion for summary judgment must be granted. It is accordingly hereby

Ordered that the defendant's motion be, and it is, hereby granted, and that the defendant have, and it is hereby granted, summary judgment against the plaintiff as prayed for.